IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUALTRICS, LLC, : <br> : <br> Plaintiff, : <br> : Civil Action <br> v. : <br> : 25-cv-630 <br> TEMPLE UNIVERSITY HEALTH : <br> SYSTEM, INC., : <br> : <br> Defendant. : <br> : | |

**MEMORANDUM**

**Younge, J.**                                                                                                **August 6, 2025**

## I.   INTRODUCTION

This case involves a contractual dispute between Plaintiff Qualtrics, LLC, ("Qualtrics") and Defendant Temple University Health Systems, Inc. ("Temple"). Between March 2022 and December 2022, the parties executed three individual contracts for the procurement of software, technical, and professional services. Temple terminated the contracts in October 2023, alleging Qualtrics had improperly disclosed its confidential information. Qualtrics filed its initial complaint in the United States District Court for the Eastern District of Pennsylvania in February 2025 claiming breach of all three contracts.

Currently before this Court is Defendant's Motion for Partial Dismissal of Count I of Plaintiff's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). (ECF No. 26 ("Def. Mot.")).[1] Defendant alleges that Plaintiff's general online terms govern their first contract, rendering Count I (breach of the first contract) as time barred as well as

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

1

filed in an improper venue. In response, Plaintiff argues that the parties' negotiated written terms govern, permitting suit in the United States District Court for the Eastern District of Pennsylvania without time limitations. For the reasons set forth in this Memorandum, Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint is DENIED.[2]

## II.     BACKGROUND[3]

On March 31, 2022, Qualtrics and Temple executed their first contract ("Order Form 1") to provide software services worth $2,870,976.70. (Am. Compl. ¶¶ 5, 9). Order Form 1 reads that "[i]f there ever [was] a conflict between the terms of the Agreement and this Order Form, this Order Form will control." (Def. Mot., Ex. A). Further, Order Form 1 explicitly states that it is "subject to the Qualtrics Terms of Services at [their website,] and, if applicable, the Business Associate Agreement…" (Def. Mot., Ex. A). On the day that Order Form 1 was executed, Qualtrics hosted terms of service on their website ("Online Terms"). (Am. Compl., Ex. A; Am. Compl. ¶ 10).

The Online Terms include a choice of law provision that enforces "the laws of the United States and the state of Utah," a choice of venue provision providing "exclusive jurisdiction of the courts located in Salt Lake City, Utah," and a requirement that "either party must initiate a cause of action for any claim(s) relating to the Agreement and its subject matter within one year from the date when the party knew, or should have known after reasonable investigation, of the facts giving rise to the claim(s)." (Am. Compl., Ex. A § 12.10). However, the Online Terms provides at

---

[2] The Court finds this Motion appropriate for resolution without oral argument. (Fed. R. Civ. P. 78); (L.R. 7.1(f)).

[3] As explained in the Legal Standard section for the present 12(b)(6) Motion, the Court may consider, in addition to pleadings in the complaint, documents that are "integral to or explicitly relied upon in the complaint." *See* Section IV.A, *infra*. Accordingly, this Section draws on facts from Plaintiff's Amended Complaint (ECF No. 24 ("Am. Compl.")) and the various contracts that are integral to the Amended Complaint.

least two ways these terms could be modified. First, the Online Terms authorized Qualtrics to modify the provisions "at any time by posting a revised version on [their] website." (Am. Compl., Ex. A, p. 1). In August 2023, Qualtrics updated their online terms ("Updated Online Terms"). (Def. Mot., Ex. B). The Updated Online Terms provided for a Delaware choice of law provision, exclusive venue in "the courts located in Wilmington, Delaware," and a similar one-year limit to file suit. (Def. Mot, Ex. B § 12.10).

Second, the Online Terms included the following provision regarding subsequent agreements: "If a valid agreement exists between you ("Customer") and [Qualtrics] related to the subject matter hereof, those terms take precedence over these terms unless otherwise agreed by the Parties in relation to a specific Order Form." (Def. Mot., Ex. A, p. 1). On April 2, 2022, two days after Order Form 1 was executed, Temple signed a negotiated set of terms and conditions ("Written Terms"). (Am. Compl. ¶ 12). On April 12, 2022, Temple returned a single combined document including Order Form 1, the Written Terms, a Data Processing Agreement, and a Business Associate Agreement. (Am. Compl. ¶ 23). Qualtrics countersigned the following day, executing the Written Terms. (Am. Compl., Ex. B at 11).[4]

The provisions of the Written Terms are different from the Online Terms and the Updated Online Terms. The Written Terms includes a choice of law provision that applies Pennsylvania law and a choice of venue provision that gives "the courts located in Philadelphia, Pennsylvania" exclusive jurisdiction. (Am. Compl., Ex. B § 12.10). Unlike the other contracts, the Written Terms do not include a one-year limitation to file a lawsuit. However, the Written Terms do include the following supersession clause:

---

[4] The Court has received a copy of Order Form 1, the Written Terms, and the Data Processing Agreement, but not the Business Associate Agreement. (Am. Compl. Exs. A-B; Def. Mot. Ex. A).

3

> The Agreement constitutes the complete and exclusive statement of the agreement between Qualtrics and Customer in connection with the parties' business relationship related to the subject matter of the Agreement. All previous representations, discussions, and writings (including any confidentiality agreements) are merged in and superseded by the Agreement and the parties disclaim any reliance on them. The Agreement may be modified solely in writing signed by both parties, except as permitted under Section 3.4. An Agreement will prevail over terms and conditions of any Customer-issued purchase order, which will have no force and effect, even if Qualtrics accepts or does not otherwise reject the purchase order.

(Am. Compl., Ex. B § 12.10). An attached Glossary to the Written Terms defines the capitalized terms in this provision, and for the rest of this contract. (Am. Compl., Ex. B, p. 14).

Months after the parties executed Order Form 1 and the Written Terms, the parties executed a second Order Form ("Order Form 2") in July 2022, worth $797,500. (Am. Compl. ¶¶ 26, 31). Order Form 2 describes itself as "an Addendum" to Order Form 1 and promises that Qualtrics would convert patient survey data into publishable ratings and reviews. (Am. Compl. ¶¶ 28, 30). A third Order Form ("Order Form 3") followed in December 2022, worth $138,752.95 and promising additional Cloud Services. (Am. Compl. ¶¶ 32, 36-37). The Written Terms, not the Online Terms, explicitly governs Order Forms 2 and 3. (Def. Mot, Exs. D-E "Governing Document").

On October 17, 2023, Temple formally notified Qualtrics that their alleged disclosure of confidential information justified immediate termination of all three Order Forms. (Am. Compl. ¶¶ 40-42; Def. Mot. Ex. F). On February 5, 2025, more than one year after receiving the letter, Qualtrics filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). Qualtrics initially pled that the Online Terms govern Order Form 1, while the Written Terms govern Order Forms 2 and 3. (*Id.* ¶¶ 10, 19, 25). Thereafter, on March 31, 2025, Temple moved for partial dismissal of the breach of contract claim for Order Form 1, arguing that the Updated Online Terms make this venue improper for this claim, and time-

4

barred as outlined in the agreement. (ECF No. 15). In response, on April 21, 2025, Qualtrics filed their Amended Complaint, pleading now that the Written Terms, not the Online Terms, govern Order Form 1. (Am. Compl. ¶¶ 54). Subsequently, Temple filed the present Motion to Dismiss on May 15, 2025. (Def. Mot.). Despite the change in pleading, Temple renews its argument that, applying the Updated Online Terms, Count I must be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, dismissed as time-barred under Rule 12(b)(6). (Def. Mot., p. 7).

## III. 12(B)(3)

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) provides defendants an avenue to challenge improper venue. (Fed. R. Civ. P. 12(b)(3)). Venue is generally proper "if consented to by the parties in a forum selection clause." *Aamco Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 706 (E.D. Pa. 2014); *see also Provident Mut. Life Ins. Co. v. Bickerstaff*, 818 F. Supp. 116, 119 (E.D. Pa. 1993); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013). However, a forum-selection clause does not render otherwise proper venue in another court automatically improper. *See Atl. Marine Const. Co.*, 571 U.S. at 52. Whether venue is proper in the original court depends exclusively on the federal statutory requirements in 28 U.S.C. § 1391. *See Id.* at 50.

Under these statutory requirements, original venue is proper if filed in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For States with multiple districts, "[corporate defendants] shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). Courts

have general jurisdiction where a corporation is "at home," paradigmatically the corporation's place of incorporation and principal place of business. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

If the original venue is proper, courts may not enforce a forum-selection clause through a Rule 12(b)(3) motion to dismiss for improper venue. *See Atl. Marine Const. Co.*, 571 U.S. at 52 ("We reject petitioner's argument that such a [forum-selection] clause may be enforced by a motion to dismiss under… Rule 12(b)(3) of the Federal Rules of Civil Procedure."). Litigants should use a 28 U.S.C. § 1404(a) motion to seek transfer to another United States District Court or the doctrine of *forum non conveniens* to seek transfer to state court. *See Atlantic Marine*, 571 U.S. 49, 59–61; *Young v. Mercado,* No. 22-2112, 2023 WL 4851416, at *1 (E.D. Pa. July 28, 2023).

## B. DISCUSSION

Defendant seeks to dismiss Count I of Plaintiff's Amended Complaint for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). (Def. Mot., p. 1). Defendant argues that the Updated Online Terms alone govern Order Form 1, providing for venue in Wilmington, Delaware, not in Philadelphia, Pennsylvania. (Def. Mot., p. 7; Def. Mot., Ex. E § 12.10). However, because Defendant deploys an incorrect mechanism to change the venue for this claim, Defendant's Motion is denied.

Plaintiff alleges, and Defendant does not dispute, that Defendant is a Pennsylvania nonprofit corporation, with its principal place of business in Philadelphia, Pennsylvania. (Am. Compl. ¶ 2). As such, Defendant resides in Pennsylvania. *See Goodyear Dunlop Tires Operations, S.A., supra.* With its principal place of business in Philadelphia, Defendant has contacts sufficient to establish personal jurisdiction in the Eastern District of Pennsylvania. Therefore, Defendant

resides in this district, so venue is proper in the United States District Court for the Eastern District of Pennsylvania.

As outlined in the previous section, the Court may not enforce a forum selection clause through a Rule 12(b)(3) motion to dismiss when venue is proper. If Defendant wishes to transfer the case to the United States District Court for the District of Delaware, Defendant may submit a 28 U.S.C. § 1404(a) motion to transfer venue. If Defendant wishes to defend this case in Delaware state court, Defendant may submit a motion to dismiss for *forum non conveniens*. *See Young*, 2023 WL 4851416, at *1 ("A forum selection clause alone cannot render other venues "wrong" or "improper" under § 1391, so it cannot be enforced through a 12(b)(3) motion. Instead, litigants should use a 28 U.S.C. § 1404(a) motion to seek transfer to another federal court or a *forum non conveniens* motion to seek transfer to a state or foreign court.") (citing *Atlantic Marine*, 571 U.S. 49, 55, 59-61) (internal citations omitted). Accordingly, the 12(b)(3) Motion is denied, and the Court reserves its formal analysis until a Section 1404(a) or *forum non conveniens* motion is filed.

## IV.    12(B)(6)

### A. LEGAL STANDARD

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

(quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Documents that are "integral to or explicitly relied upon in the complaint" may be considered. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F. 3d 521, 526 (3d. Cir. 2009).

### B. DISCUSSION

Defendant seeks to dismiss Count I of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that the Updated Online Terms time-bar Plaintiff's claim. (Def. Mot., p. 1). Accordingly, for the Court to grant Defendant's Motion, the Court must rule as a matter of law that the Updated Online Terms unambiguously govern Order Form 1. The Court declines to make said finding because a fact finder could reasonably determine that the Written Terms superseded Order Form 1, so the Court cannot grant Defendant's Motion.

Contractual clarity or ambiguity is a matter of law. *See Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011). However, in a 12(b)(6) motion, the Court must construe contractual language, as a matter of fact, in Plaintiff's favor. *See Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586, 592 (E.D. Pa. 2011) ("[A]t this stage of the litigation, the court must construe all facts in favor of the non-moving party. In this case, evaluation of the contract itself…."). "A contract provision is ambiguous if it is susceptible of two reasonable alternative interpretations." *Id.* If the Court determines the contract to be ambiguous, the fact finder must "resolve the ambiguity." *See Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 569

(E.D. Pa. 2020). Stated otherwise, "when a contract is ambiguous, courts deny motions to dismiss so that the parties may obtain discovery in an effort to resolve the ambiguity." *Liberty Mut. Fire Ins. Co. v. Harleysville Ins. Co.*, No. 21-7669, 2022 WL 2870201, at *3 (D.N.J. July 20, 2022).

The parties agree that, at execution, the Online Terms governed Order Form 1. (Am. Compl. ¶ 10; Def. Mot. Ex. A at "Governing Document"). However, the Online Terms themselves explain that "[i]f a valid agreement exists between you ('Customer') and [Qualtrics] related to the subject matter hereof, those terms take precedence…." (Am. Compl., Ex. A at 1). Plaintiff alleges that the Written Terms, as a valid agreement related to the parties' negotiations, takes precedence over the Online Terms. (Am. Compl. ¶¶ 11-13). Defendant, on the other hand, claims that three unambiguous readings of these contracts prevent the Online Terms from being superseded by the Written Terms: (1) Order Form 1 directly controls a conflict of terms with the Online Terms, (2) the parties "otherwise agreed" to exempt Order Form 1 from integration, and (3) the Written Terms' definition of "Order Form" excludes Order Form 1, thus exempting Order Form 1 from the Witten Terms' supersession clause.

The Court will review each of Defendant's arguments to determine whether the terms of these contracts unambiguously did not allow the Written Terms to supersede the Online Terms. However, first, the Court must determine which States' laws govern the review of Order Form 1, as the parties dispute which terms govern the contract, and consequently, which law to apply.

    **1.    There is No Genuine Conflict of Law Between Utah, Delaware, and Pennsylvania.**

The parties dispute what law governs Order Form 1 and, as a result, what law should guide this Court's interpretation. Although United States and Utah law governed the Online Terms at Order Form 1's execution (Am. Compl. Ex. A § 12.10), Delaware state law now governs the Updated Online Terms (Def. Mot. Ex. B § 12.10), and Pennsylvania state law governs the Written

Terms. (Am. Compl. Ex. B § 12.10). "In diversity cases such as this one, we look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Under Pennsylvania state law, "courts first consider whether a 'true conflict' exists between the [three] states." *Melmark, Inc. v. Schutt by & Through Schutt*, 206 A.3d 1096, 1104 (Pa. 2019). "If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply." *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006).

Here, there is no genuine conflict of law between Utah, Delaware, and Pennsylvania, as all three States agree on how to resolve contractual ambiguity. First, courts must consider whether the contract is unambiguous as a matter of law. *See Cent. Fla. Invs., Inc. v. Parkwest Assoc.*, 2002 UT 3, 40 P.3d 599, 605 (Utah 2002) ("If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."); *Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 759-60 (Del. 2018) (en banc) ("In interpreting a contract, the Court must give priority to the parties' intentions as reflected in the four corners of the agreement. The Court must interpret clear and unambiguous terms according to their ordinary meaning….") (internal quotation marks omitted); *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015) ("When a written contract is clear and unambiguous, the parties' intent is contained in the writing itself."). A contract is ambiguous if it could be reasonably understood, interpreted, or construed in multiple ways. *See Cent. Fla. Invs.*, 40 P.3d at 605 (Utah 2002) (quoting *Dixon v. Pro Image Inc.*, 1999 UT 89, 987 P.2d 48, 52 (Utah 1999)) ("An ambiguity exists where the language 'is reasonably capable of being understood in more than one sense.'"); *Bathla*, 200 A.3d at 760 (Del. 2018) ("The test for

10

ambiguity is whether 'the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings.'"); *Wert*, 124 A.3d at 1259 (Pa. 2015) ("An ambiguity is present if the contract may reasonably be construed in more than one way."). If the contract is ambiguous within its four corners, the fact finder must then resolve any genuine ambiguity that remains. *See Brady v. Park*, 2019 UT 16, 445 P.3d 395, 407 (Utah 2019) ("But where a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be determined by the fact-finder."); *Eagle Indus., Inc.*, 702 A.2d at 1232-1233 (Del. 1997) ("[T]he reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms…. If there are issues of material fact, the trial court must resolve those issues as the trier of fact."); *Allegheny Intern., Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d. Cir. 1994) ("Under Pennsylvania law, ambiguous writings are interpreted by the fact finder….").

### 2. Order Form 1 Does Not Unambiguously Control a Conflict of Terms with the Online Terms

First, Defendant argues that Order Form 1 unambiguously controls a conflict of terms with the Online Terms, thus precluding integration by the Written Terms. Order Form 1 explicitly states that the Online Terms govern. (Def. Mot., Ex. A at "Governing Document"). As explained previously, the Online Terms allow for other valid agreements to take precedence (Am. Compl. Ex. A at 1). Plaintiff alleges that the Written Terms, as a valid agreement related to the parties' negotiations, qualify under the Online Terms' carve-out. (Am. Compl. ¶ 19). Defendant, on the other hand, claims that Order Form 1 itself prevents this integration, as Order Form 1 states that "[i]f there is a conflict between the terms of the *Agreement* and this Order Form, this Order Form will Control." (Def. Mot., Ex. A "Governing Document"; Def. Mot., p. 18) (emphasis added). Defendant assumes that the "Agreement" within this provision is the Online Terms. (Def. Mot. at

11

18). With this understanding, according to Defendant, Order Form 1 and the Online Terms conflict because Order Form 1 states that the Online Terms will govern, while the Online Terms allow for other agreements to govern. Given this, Defendant argues that Order Form 1 should control and prevent integration otherwise allowed by the Online Terms. (Def. Mot., p. 18).

The Court declines to adopt Defendant's interpretation, as Defendant's reading of Order Form 1 is not unambiguous. The clause where Order Form 1 defines "Agreement" appears as follows:

> **Governing Document:** This Order Form is subject to the Qualtrics Terms of Service at https://www.qualtrics.com/terms-of-service/ and, if applicable, the Business Associate Agreement between the parties dated on or about the Effective Date (the "**Agreement**"). All capitalized terms used but not defined herein have the meanings given to them in the Agreement. If there is a conflict between the terms of the Agreement and this Order Form, this Order Form will control.

(Def. Mot., Ex. A). As shown above, the parenthetical for the "Agreement" appears at the end of a sentence that references the Online Terms and the Business Associate Agreement. However, in addition to being at the end of the sentence, the parenthetical is immediately after the contracts' reference to the Business Associate Agreement. The parties have not identified, nor has the Court found, an applicable canon of interpretation to determine with accuracy what the parenthetical is defining. Accordingly, it is unclear whether the "Agreement" is (1) collectively, the Online Terms, and, if applicable, the Business Associate Agreement; or (2) just the Business Associate Agreement.

This ambiguity is relevant because, if Order Form 1 defines "Agreement" as the Business Associate Agreement, then Order Form 1's conflict clause would not prevent integration. In this contract, "[a]ll capitalized terms used but not defined herein have the meanings given to them in the Agreement." (Def. Mot., Ex. A "Governing Document"). Accordingly, "Agreement," as a capitalized term defined within Order Form 1, placed after a document called Business Associate

12

Agreement, could consistently mean the Business Associate Agreement. Thus, with this definition of "Agreement," when Order Form 1 declares that it controls "a conflict between the terms of the Agreement and this Order Form," it is saying that Order Form 1 governs over the Business Associate Agreement when a conflict exists. This interpretation of Order Form 1's conflict clause does not unambiguously prevent the integration allowed by the Online Terms. Ultimately, and because it is unclear what "Agreement" is defining, a factfinder must make a determination of how to interpret this language.

### 3. The Online Terms Does Not Unambiguously Preclude Order Form 1 From Integration by the Written Terms

Next, Defendant argues that the Online Terms precludes the Written Terms from taking precedence because Order Form 1 unambiguously exempts integration by other documents. (Def. Reply, p. 5). The Online Terms allow for valid agreements between Plaintiff and the "Customer" to take precedence "unless otherwise agreed by the Parties in relation to a specific Order Form." (Def. Mot. at p. 3; Am. Compl., Ex. A., p. 1). Defendant suggests that two separate provisions in Order Form 1 demonstrates that the parties agreed that later documents "would not take precedence over the Online Terms of Service," including: (1) Order Form 1's conflict-of-terms provision, and (2) Order Form 1's governance by the Online Terms. (Def. Reply, p.6). The Court can easily dispose of Defendant's first argument, as Defendant relies upon the same ambiguous reading of the conflict-of-terms provision as outlined in the previous section. The remaining question for the Court is whether the Order Form's original governance by the Online Terms unambiguously demonstrates that the parties "otherwise agreed" to exempt Order Form 1 from all future integration. The Court concludes that it does not.

The phrase "unless otherwise agreed" does not establish what degree of agreement is necessary to trigger the Online Terms' exception. The language could require, as Defendant

13

suggests, only that the parties agreed that the Online Terms would govern Order Form 1. In other words, a reasonable fact finder would read the provision as: "unless otherwise agreed by the Parties [that the Online Terms will govern] in relation to a specific Order Form." If this were the case, then Order Form 1's explicit appeal to the Online Terms would prevent the Written Terms from integrating Order Form 1. Although plausible, Defendant fails to demonstrate that this is the only reasonable reading of the contract.

That said, "unless otherwise agreed" could instead require that the parties affirmatively agreed to *disallow* integration. A reasonable fact finder could interpret the provision as: "unless otherwise agreed by the Parties [to preclude integration] in relation to a specific Order Form." If this were the case, only an agreement akin to a conflict-of-terms provision between Order Form 1 and the Online Terms would trigger the exception. Such an agreement would strongly express the parties' mutual assent for the Online Terms to govern above all else. As outlined in the previous section, Order Form 1's conflict-of-terms provision is not unambiguously applicable to a conflict between the Order Form and the Online Terms. Therefore, Order Form 1 lacks an "otherwise agree[ment]" sufficient to demonstrate that the parties mutually agreed to disallow integration. A fact finder must resolve the ambiguity to determine whether, as a matter of fact, the parties did "otherwise agree" that the Online Terms would exclusively govern Order Form 1. The Court cannot rule as a matter of law that this provision precludes the Written Terms' integration of Order Form 1.

### 4. The Written Terms' Supersession Clause Does Not Unambiguously Exclude Order Form 1 From Being Superseded by the Written Terms

Finally, Defendants argue that the integration clause in the Written Terms unambiguously excludes Order Form 1. (Def. Reply, p. 7). Specifically, Defendant contests that Order Form 1 is not an "Agreement" as defined by Written Terms, and thus not bound to integration. While the

14

Court agrees with Defendant's unambiguous interpretation of this term, that interpretation fails to resolve the ambiguous interpretation of the entire integration clause.

As noted in the Background Section, The Written Terms includes the following supersession clause:

> The Agreement constitutes the complete and exclusive statement of the agreement between Qualtrics and Customer in connection with the parties' business relationship **related to the subject matter of the Agreement.** All previous representations, discussions, and writings (including any confidentiality agreements) are merged in and superseded by the Agreement and the parties disclaim any reliance on them. The Agreement may be modified solely in writing signed by both parties, except as permitted under Section 3.4. An Agreement will prevail over terms and conditions of any Customer-issued purchase order, which will have no force and effect, even if Qualtrics accepts or does not otherwise reject the purchase order.

(Am. Compl., Ex. B § 12.10) (emphasis added). The Written Terms define "[c]apitalized terms" used within the document in its Glossary. (Am. Compl., Ex. B § 1). As such, an "Agreement" is defined as "an Order Form and documents incorporated into an Order Form." (Am. Compl., Ex. B "Glossary" § 1.2). "Order Form" is another capitalized term that is defined as "the ordering document for a Cloud Service *that references* the GTCs." (Am. Compl., Ex. B "Glossary" § 1.11) (emphasis added). Within the Written Terms, the "GTCs" refer to the Written Terms themselves. (Am. Compl., Ex. B, p. 2). Accordingly, to qualify as an "Order Form" under the Written Terms, an Order Form *must* reference the Written Terms. As Defendants point out, Order Form 1 does not reference the Written Terms, so it does not qualify as an "Order Form" under the Written Terms, and is thus excluded from the Written Terms' definition of "Agreement."

Although the Plaintiff argues that the definitions of "Order Form" and "Agreement" in the Written Terms are "substantively identical" to those in the Online Terms, the Court concludes the definition of "Order Form" in the Online Terms is actually substantively different. The Online Terms define an "Order Form" as "the medium by which Customer purchases a Cloud Service,

15

*including, as applicable*, an ordering document that references the GTC." (*Id.* Ex. A "Glossary" § 11) (emphasis added). Within the Online Terms, the "GTC" refers to the Online Terms themselves. (Am. Compl., Ex. A, p. 2). Accordingly, to qualify as an "Order Form" under the Online Terms, an Order Form *may* reference the Online Terms. The removal of language that simply permits an example (i.e., "including, as applicable") for the inclusion of language that requires an element (i.e., "that references the GTCs") demonstrates a material difference between the Online Terms and the Written Terms. Even if Order Form 1 did not directly reference the Online Terms ("the GTC"), it would still qualify as an Order Form under the Online Terms because it constitutes a medium by which Defendant purchased Cloud Services. However, the same is not true under the Written Terms. Because Order Form 1 does not reference the Written Terms themselves, it does not qualify as an Order Form under the Written Terms, *even though* it remains a medium by which Defendant purchased Cloud Services. Within the four corners of the contract, this element of necessity demonstrates the parties' mutual assent to narrow the scope of the Written Terms. Order Form 1 is not included within this narrowed scope. Therefore, the Written Terms unambiguously do not directly integrate Order Form 1 as *an "Order Form."*

As with any contract, the Written Terms' own integration clause demonstrates the parties' mutual assent regarding the scope of the agreement. *See* Section IV(B)(1), *supra* (Utah, Delaware, and Pennsylvania state law explaining that the objective manifestation of the parties' intent shall be drawn from the language of the contract itself). The Court must evaluate the language of the Written Terms' integration clause to determine if, as a matter of law, the Written Terms unambiguously exclude Order Form 1. The Court concludes that it does not. A fact finder could reasonably determine that Order Form 1 constitutes part of the parties' business relationship properly covered by the integration clause. Order Form 1 would then fall within the scope of the

Written Terms and be properly integrated. The fact finder must, therefore, resolve any ambiguity over Order Form 1's integration.

Again, as explained, Order Form 1 does not constitute an Order Form under the Written Terms. In other words, there was no underlying "Agreement" for which the Written Terms could "constitute the complete and exclusive statement" by the parties. However, Order Form 1 was not the end of the parties' contractual relationship. In July 2022, three months after Order Form 1, the parties executed Order Form 2 as "an Addendum" to the first. (Def. Mot. Ex. D). On December 30, 2022, the parties executed their final contract, Order Form 3. (Def. Mot. Ex. E). Although not self-described as an "Addendum," Order Form 3 includes additional Cloud Services. (Def. Mot. Ex. E "Attachments").

Order Forms 2 and 3 are both "Ordering Documents for Cloud Services that reference the [Written Terms]." As a result, both contracts qualify as Order Forms under the Written Terms. Again, "Agreement[s]" covered by the Written Terms are "Order Forms and documents incorporated into Order Forms." (Am. Compl.. Ex. B "Glossary" § 1.2). Therefore, Order Forms 2 and 3, and documents incorporated thereof, are "Agreements" bound by the Written Terms' integration clause. Once the parties executed Order Forms 2 and 3, the Written Terms then "constitute[d] the complete and exclusive statement of the agreement between [Plaintiff] and [Defendant] in connection with the parties' business relationship related to the subject matter of [Order Forms 2 and 3 and documents incorporated into the Order Forms]."

A fact finder could reasonably determine that Order Form 1 constituted part of the parties' business relationship related to the subject matter of Order Forms 2 and 3. Order Form 1 could qualify as a "document incorporated into Order Form 2," as the second contract defines itself as an "Addendum." If this were the case, then the Written Terms would directly integrate Order Form

17

1 as part of the "Agreement." Or, Order Form 1 could qualify as part of the "business relationship related to the subject matter of [Order Forms 2 and 3]." It would be difficult to conclude that Order Form 1 did *not* relate to subject matter of Order Form 2. Both Order Forms 2 and 3 expand on the specific services provided in the first Order Form, including the "Professional Services" and "Cloud Services." (Def. Mot., Exs. A, D-E "Attachments"). And, Order Form 2's description as "an Addendum" would cease to have any effective meaning if there were no underlying agreement to "add" onto. The fact finder must resolve the ambiguity to determine whether Order Form 1 constituted a part of the parties' business relationship specific to Order Forms 2 and 3.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Dismissal is Denied.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                             BY THE COURT:

                                             /s/ John Milton Younge
                                             **Judge John Milton Younge**